BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
AMY E. POTTER
amy.potter@usdoj.gov
Assistant United States Attorney
405 E. 8th Street, Suite 2400
Eugene, Oregon 97401-2708
Telephone: (541) 465-6771
Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**MEDFORD DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**$17,857.00 U.S. CURRENCY and $17,300.52 U.S. CURRENCY, *in rem*,**

**Defendants.**

**1:19-cv-01616-BR**

**COMPLAINT, *in rem*, FOR FORFEITURE**

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and Amy E. Potter, Assistant United States Attorney, for its complaint *in rem* for forfeiture, alleges:

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to 21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

II.

Defendants, *in rem*, $17,857.00 U.S. Currency and $17,300.52 U.S. Currency, were

seized in the District of Oregon, and are now and during the pendency of this action will be within the jurisdiction of this Court.

III.

Defendants, *in rem*, $17,857.00 U.S. Currency and $17,300.52 U.S. Currency represent proceeds traceable to an exchange for controlled substances or were used or intended to be used to facilitate such a transaction in violation of 21 U.S.C. § 841(a)(1), and are forfeitable to the United States pursuant to the provisions of 21 U.S.C. § 881(a)(6), as more particularly set forth in the declaration of Christopher Karabinas, Special Agent, Homeland Security Investigations, marked as Exhibit A, attached and fully incorporated herein by this reference.

WHEREFORE, plaintiff, United States of America, prays that due process issue to enforce the forfeiture of defendants, *in rem*, $17,857.00 U.S. Currency and $17,300.52 U.S. Currency; that due notice be given to all interested persons to appear and show cause why forfeiture of these defendants, *in rem*, $17,857.00 U.S. Currency and $17,300.52 U.S. Currency should not be decreed; that due proceedings be had thereon; that these defendants be forfeited to the United States; that the plaintiff United States of America be awarded its costs and disbursements incurred in this action.

DATED: **October 9, 2019.**    Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*s/ Amy E. Potter*
**AMY E. POTTER**
Assistant United States Attorney

**VERIFICATION**

I, Christopher Karabinas, declare under penalty of perjury, pursuant to the provisions of 28 U.S.C. Section 1746, that I am a Special Agent with Homeland Security Investigations and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

*s/Christopher Karabinas*
CHRISTOPHER KARABINAS
Special Agent
Homeland Security Investigations

**DECLARATION of CHRISTOPHER KARABINAS**

I, Christopher Karabinas, do hereby declare:

**BACKGROUND/EXPERIENCE**

1. I am a Special Agent (SA) of the Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and have been so employed since December 2010. I am currently assigned to the Resident Agent in Charge office, Medford, Oregon. I completed six months training at the HSI Academy located at The Federal Law Enforcement Training Center, Glynco, GA, where I learned the skills necessary to conduct federal criminal investigations, including investigating crime scenes, interviewing witnesses and suspects, and writing reports and affidavits. Prior to this, I was employed as a U.S. Customs and Border Protection Officer, Immigration Officer, and a U.S. Federal Air Marshal. I have been a federal law enforcement officer since August of 2000. During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of money laundering, narcotics trafficking, fraud, smuggling, and theft. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and my participation in other investigations. I am a participating member of the Medford Area Drug and Gang Enforcement Taskforce (MADGE) located in Medford Police Department's drugs and gang division.

2. I have participated in searches of premises and assisted in evidence gathering by means of search warrant. I have received training in investigating money laundering and have had the opportunity to study and investigate numerous examples of money laundering schemes

specifically pertaining to the laundering of drug proceeds. I have received approximately 80 hours of specialized training from the Federal Law Enforcement Training Center regarding asset forfeiture and financial investigations.

3. I have participated in hundreds of investigations at the federal, state, and local levels. These investigations have pertained to narcotics trafficking and laundering drug proceeds as well as a variety of criminal activities including bulk cash smuggling, alien smuggling, fraud, illegal exportation of munitions, interstate transportation of stolen property, and wire fraud.

**PURPOSE OF THIS DECLARATION**

4. This declaration is submitted in support of a civil complaint *in rem* for forfeiture of $17,857.00 in U.S. currency seized from Cheng Vang and Tong Xiong at their home located at 7823 Williams Highway, Grants Pass, Oregon, hereinafter referred to as Subject Property #1, and $17,300.52 seized from Wells Fargo Bank, including $16,531.71 from account number xxxxxx7998 in the name of Value Trading LLC, and $768.81 from account xxxxxx3380 in the name of Cheng L. Vang and Tong Xiong, hereinafter referred to as Subject Property #2. As discussed below, I believe there is probable cause to believe that Subject Property #1 and Subject Property #2 are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as they constitute or were derived from proceeds traceable to violations of 21 U.S.C. § 841(a)(1).

5. I have personally participated in this investigation, and the following information is derived from my personal observation, interviews, review of physical evidence as well as review of reports generated by other law enforcement officials and discussions with other investigators who have personal knowledge of the matters covered in those reports, and from conversations with persons who have personal knowledge of the events described herein. I have not included all

of the details of the investigation, only those facts that I believe necessary to demonstrate a probable cause to proceed with civil forfeiture of Subject Property #1 and Subject Property #2.

6. From my own experience, I know that persons who obtain income from illegal sources frequently structure their financial dealings in such a manner as to conceal the source of the proceeds. These persons often acquire assets, make personal expenditures, and/or use the proceeds from the illegal sources to continue the illegal activity that generates the proceeds. They often store much of the proceeds in their personal residence in order to avoid depositing large sums of cash into a bank account that may raise the bank's suspicion that the proceeds are from an illegal activity.

7. I know from my training and experience that Oregon legalized the production and sale of marijuana and that recreational marijuana remains illegal in Missouri and other states. Marijuana grown in Oregon sells for far less in Oregon than it sells for in states where it remains illegal. For this reason, I know that marijuana grown in Oregon is often shipped to other states, and that Oregon marijuana growers are often paid in cash.

**SUMMARY OF THE INVESTIGATION**

8. In August 2018, the Oregon State Police (OSP) with the assistance of HSI became involved in the investigation of a marijuana grow in Oregon run by Cheng Vang (Vang) that was shipping marijuana out of state. Vang has an illegal marijuana grown in Grants Pass Oregon.

**Devine Interview**

9. The investigation began after OSP conducted a traffic stop in Lakeview, Oregon, and arrested the driver, James Charles Devine (Devine) for transporting approximately 162 pounds of

marijuana. Devine agreed to cooperation in the hopes of receiving consideration for his pending charges and told OSP Detective Thomas Willis the following in substance:

- Devine is from Missouri.
- The marijuana came from Vang's residence, which was located behind a separate, unrelated piece of property that is a "great big" commercial marijuana grow.[1]
- Cheng Vang, Jr. (Vang, Jr.) paid for Devine's plane ticket to Oregon. Devine arrived in Medford and went to Vang's residence.
- Devine hung out at the Vang's residence prior to going to Enterprise Rental Car with Vang.
- Devine paid for the rental vehicle and drove back to Vang's residence.
- Devine was sleeping when "they" loaded the van with the marijuana that was packaged in vacuum-sealed bags.
- Devine saw about 50 marijuana plants growing outside at Vang's residence that were about 3' tall but did not see any indoor grows at Vang's residence.
- Devine did not know if the marijuana found in his van came from Vang's house or somewhere else. Vang also had branches of marijuana hanging outside to dry, but Devine was not sure how many pounds or how much.
- Devine saw the vacuum seal bags and the vacuum sealer in Vang's residence.
- Devine does not know how much money was given for the marijuana.
- Devine stated when he got to Kansas City, Missouri with the marijuana, he was going to message Vang for instructions on what to do with the marijuana.
- The original purpose of Devine's trip to Vang's house was to do electrical work. Devine was supposed to help install lights and fans in the basement, likely for a marijuana grow at Vang's house.
- Devine has been to Vang's house three to four times, and this was the first time he was asked to transport marijuana.
- Devine knows Vang is a marijuana grower, but he does not know if he is a medical marijuana grower.
- When Devine arrived at Vang's house, Vang asked him to take the marijuana to Missouri.
- Devine has known Vang for about 20 years, and they met in Minnesota.

---

[1] The investigation revealed that the residence at 7823 Williams Highway, Grants Pass, Oregon and the marijuana grow operation at 7835 Williams Highway, Grants Pass, Oregon are two separate but adjoining tax lots both owned by Cheng Leng Vang.

- Vang offered Devine a job at a farm in Missouri, so Devine moved to Missouri to work for Vang.
- Vang is approximately 50 years old, moved to Oregon 2-4 years ago, and lives at the residence with his wife and three sons.
- Devine described how to get to the Vang's residence.
- Devine did not see any firearms at Vang's house and the Vangs are not violent toward law enforcement.
- Devine was shown an aerial photograph of Vang's residence located at 7823 Williams Highway in Grants Pass, Oregon. Devine positively identified the photograph as being Vang's property and the location where Devine obtained the marijuana.

**OLCC and OMMP Licensing at Williams Highway Property**

10. On August 21, 2018, Detective Lee conducted a check with the Oregon Medical Marijuana Program (OMMP), Oregon Liquor Control Commission (OLCC), and the Department of Agriculture for the address of 7823 Williams Highway, Grants Pass, Oregon. He also conducted a check under the name of Cheng Leng Vang. Neither the Department of Agriculture nor OLCC had either the address or Vang in their system. OMMP did confirm that Vang was a current cardholder and the address of 7823 Williams Highway was a current marijuana grow site for two persons. Therefore, according to Oregon State law, the 7823 Williams Highway address legally could have a maximum of 16 marijuana plants.

11. On September 4, 2018, Detective Lee conducted a check with the OMMP, OLCC, and the Department of Agriculture for the address of 7835 Williams Highway. The Department of Agriculture and OLCC did not have either the address or Cheng Leng Vang in their system. OMMP did confirm that the address of 7835 Williams Highway was a current marijuana grow site for five persons. Therefore, the 7835 Williams Highway address is allowed to have a total of 34 marijuana plants legally in the state of Oregon.

**Property Records**

12. According to the Josephine County, Oregon Tax Assessors Office, Cheng Leng Vang owned the property located at 7823 Williams Highway. Cheng Leng Vang also owns the property of 7835 Williams Highway. Vang listed his address as 7823 Williams Highway, Grants Pass, OR. 97527. 7823 and 7835 Williams Highway are two separate tax lots that are adjoining. The main house is located on the 7823 Williams Highway tax lot. The 7835 Williams Highway tax lot contained an illegal marijuana grow.

13. Based on my training and experience, I am aware that the properties located at 7823 and 7835 Williams Highway, Grants Pass, OR are in an area in which the land is known as particularly good for marijuana cultivation.

14. During the week of August 27, 2018, OSP Trooper Ryan Gosse and Detective Lee conducted a flight over the tax lots of 7823 and 7835 Williams. Photographs of the mentioned properties are shown below:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /





**Declaration of Christopher Karabinas**                                   **EXHIBIT A   Page 7**

**Williams Highway Search Warrants**

15. Based on the above information, Detective Lee obtained an Oregon State search warrant for the premises located at 7823 and 7835 Williams Highway. On September 11, 2018, OSP, with assistance from HSI, executed the search warrants.

16. During the search of the residence and property, $17,857.00 (Subject Property #1), 10 firearms, 89 mature marijuana plants with buds (marijuana flower), digital storage devices in the form of SD cards, and 4 notebooks with what appeared to be drug records were seized as evidence of drug trafficking.

17. In addition to the above-seized items, other items were photographed in place but not seized. These include marijuana glass pipes, large boxes containing dried marijuana, postal package envelopes, money gram receipts, bank records, documents, marijuana growing and processing equipment, and dried marijuana flower. Eight mature marijuana plants (4 per each tax lot) along with approximately 63 immature marijuana plants also were not seized in accordance with Oregon state law.

18. Detective Lee conducted a recorded interview with Vang after the search warrant was read to Vang and his family. Vang was advised that the interview was going to be recorded, and Vang was read his *Miranda* rights. Vang said he understood his rights. During the interview, Vang provided the following statements in substance:

- Vang and his family bought the property in December of 2016.
- Vang said he came to Oregon from Missouri to have an “easier life” because he and his wife had been sick and his children were also having medical problems. Vang talked about treating his family’s pain the natural way with medical marijuana.

- Vang said he was a poultry/cattle farmer in Missouri since 2004. He said they owned approximately 300 acres when he lived in Missouri, and when they sold the farm they paid off the land. Vang said after the land was paid off in Missouri, they traded the land for the property on which they currently lived. Vang said it was a "1031" tax exchange, which he described as a government program in which one business can be exchanged for another business.

- Vang said he originally thought of doing a recreational marijuana grow but he realized that the property was too small and it had a lot of trees.

- Vang said he was the grow site administrator for 7823 Williams Highway and his wife, Tong Xiong, was the grow site administrator for 7835 Williams Highway.

- Vang confirmed that he only had medical marijuana (OMMP) grow rights on the property.

- Vang said he had 7 OMMP grow cards total for both tax-lots.

- Detective Lee told Vang that one of his OMMP grow cards had recently expired and Vang said that card was in the process of being renewed.

- Vang stated he had 40 marijuana plants at 7823 Williams Highway and 44 marijuana plants at 7835 Williams Highway.

- Detective Lee advised Vang he was over the amount of plants he could have on each tax-lot according to how many OMMP cards he had.

- Detective Lee told Vang he knew he was shipping marijuana out of state and asked Vang how much marijuana he has shipped out of Oregon. Vang denied shipping marijuana out of the state of Oregon. Detective Lee advised Vang again that he knew he was shipping marijuana out of the state and wanted to know how many times he has done it. He asked Vang if his family was involved in shipping the marijuana and Vang said he did not know. Vang said his family uses all their marijuana for various reasons.

- Detective Lee asked Vang if he was aware that it was not legal for marijuana to leave the state of Oregon, and Vang said he was not aware of that. Detective Lee asked Vang again how many times he has sent marijuana out of the state of Oregon. Vang said that he has not done it himself. Detective Lee asked Vang if he was aware of who was doing it within his household because he knew that marijuana was being shipped from his residence. Vang said he did not know.

- Vang said he had a couple of pounds of marijuana left, and his sister had some too. Vang's brother-in-law had a stroke and they lived in Selma, Oregon. Vang said his sister and brother-in-law could not operate their farm in Selma because they did not have any money left. Vang said his sister and brother-in-law had to move to Portland. Vang said his sister asked if Vang or his family could help her and that she had some marijuana left from last year

- Vang said it was only one time (referring to the marijuana being shipped out of the state of Oregon) and it was recently. Vang said he had a couple of pounds left. Detective Lee asked Vang how much a couple of pounds meant to him. Vang said it was about 20 pounds of marijuana and it was from last year's marijuana grow. Vang said his sister had about 30 pounds of marijuana left from last year's marijuana grow.

- Detective Lee asked Vang who took the marijuana and where was it going. Vang said his name was "James." Vang said James was a friend of his.

- Vang said he gave James 10-20 pounds of marijuana and Vang's sister had approximately 30 pounds of marijuana that went to James also. Vang said James picked the marijuana up from Vang's house (7823 Williams Highway.)

- Detective Lee asked Vang where James was taking the marijuana, and Vang said he did not know.

- Detective Lee asked Vang if there was any money exchanged between him (Vang) and James. After a long pause Vang stated he did not want to talk with Sergeant Hamilton or Detective Lee any further.

19. On September 11, 2018, Detective Lee conducted an interview with Vang's adult son Chuej Vang (Chuej) outside of the residence. Chuej was advised that the interview was going to be recorded, and Chuej was read his *Miranda* rights. Chuej said he understood his rights.

20. During the interview, Chuej provided the following statements in substance:

- Detective Lee advised Chuej there were more plants at their marijuana grow than was allowed. He also told Chuej that he knew marijuana had left their property and was intended to leave the state of Oregon.

- Chuej said he was not aware that marijuana was being shipped from the property.

- Detective Lee asked Chuej if he was aware of a recent time when his dad (Vang) had given marijuana to a friend to take. Chuej said he was not aware of that but he was aware of his father giving marijuana to his aunt who is now in Portland.

- Detective Lee told Chuej that Vang had said James picked up marijuana from their residence (7823 Williams Highway) and it was going to Missouri. Chuej said yes. Detective Lee asked about the relationship of James to the family, and Chuej said James was a longtime friend who helped with construction.

- Detective Lee asked Chuej what his involvement was. Chuej said his involvement was to help his parents take care of the marijuana grow (farm) and property.

- Detective Lee asked Chuej if he knew whether James was going to sell the marijuana, and Chuej said he most likely would if he was heading towards the mid-west with the marijuana.
- Detective Lee asked Chuej if James bought the marijuana from Vang, and Chuej said he was unsure.
- Detective Lee asked Chuej where James was from. Chuej said James was from the mid-west not from Oregon.
- Detective Lee asked Chuej how James got to Oregon. Chuej said he wasn't sure. He had heard James drove out to Oregon, but that his car had broken down.
- Detective Lee asked Chuej why James came to Oregon. Chuej said James came to do electrical work for them and fix some things.
- Detective Lee asked Chuej if he knew any details on how the marijuana ended up with James. Chuej said he wasn't sure.
- Chuej did remember James being at their house, but only thought James was there to fix their house.

21. During the search of the residence, investigators located bank account information for Wells Fargo Bank and U.S. Bank in the names of Cheng Vang and Tong Xiong. Investigators also located a Wells Fargo Bank receipt dated August 14, 2018, that showed a balance of $30,267.31.

22. During the search warrant, law enforcement discovered $17,857 inside the residence (Subject Property #1). $15,857 was located in the master bedroom in a safe in the closet, purses in the closet, and a wallet elsewhere in the bedroom. In an upstairs bedroom, which Chuej identified as his bedroom, investigators located a closed container with $2,000.00 inside.

23. Inside the master bedroom closet, law enforcement also found nine rifles and one revolver. Four notebooks found in various locations within the residence contained dollar amounts and numbers recorded inside. The notebooks appeared to be drug records. Also located inside the master bedroom were four Walmart MoneyGram orders that were purchased from March 2, 2017 to June 29, 2018.

24. Investigators also located a padded envelope with the name "James Devine" on it and another padded yellow envelope addressed to Cheng Vang at the 7823 Williams Highway, Grants Pass, Oregon from an address in Missouri.

25. The basement of the residence contained approximately 33 immature marijuana plants, trimmed and dried marijuana flower, marijuana "shake," marijuana drying racks, plastic bags, and shipping boxes that contained dry marijuana debris. The dining room area contained approximately 30 immature marijuana starter plants along with a small amount of dried marijuana on a shelf. The outside of the residence had two marijuana grows that contained a total of 84 mature marijuana plants and a greenhouse that contained 13 immature marijuana plants.

26. During the interview, Chuej did not claim ownership of the money and signed a HSI Notice of Abandonment form # 4607. Vang refused to sign the form. Vang and Chuej were cited and released with a future court date pending charges by the State of Oregon for drug and money laundering violations. On September 18, 2018, the currency (Subject Property #1) was converted into a bank wire for HSI Medford agents to process for forfeiture.

**Financial Investigation**

27. A review of Wells Fargo Bank Account # xxxxxx7998 indicated suspicious activity conducted on the account belonging to Vang and Xiong in the name of Value Trading LLC between February 9, 2018 and September 20, 2018, totaling $199,009.72.

28. Oregon Secretary of State Records revealed that Value Trading LLC was established on February 6, 2018. Organizers were listed as Yia Vang and Cheng Leng Vang, 7823 Williams Highway, Grants Pass, Oregon 97527. The principal place of business was listed as the same address.

29. The account had deposits totaling $186,510.51 ranging from $2,000.00 to $90,000.00 from unknown sources.

- 02/09/2018 account # xxxxxx7998 a cash deposit for $26,120.00.
- 02/12/2018 account # xxxxxx7998 a wire deposit for $42,120.51.
- 02/13/2018 account # xxxxxx7998 a cash ATM deposit for $10,000.00 in an Oregon branch.
- 02/14/2018 account # xxxxxx7998 had a wire deposit for $6,270.00 in a Minnesota branch.
- 02/14/2018 account # xxxxxx7998 had a wire deposit for $10,000.00.
- 02/14/2018 account # xxxxxx7998 had an ATM deposit for $10,000.00 in an Oregon branch.
- 03/01/2018 account # xxxxxx7998 had an ATM deposit for $2,000.00 in an Oregon branch.
- 03/23/2018 account # xxxxxx7998 had an ATM deposit for $90,000.00 in an Oregon branch.

30. Vang and his wife Xiong reported that they are farmers, but they did not indicate that they have a marijuana farm. The large monetary deposits in this account appear to be the proceeds of a controlled substance violation.

31. On October 24, 2018, Vang and Xiong filed administrative claims to the seized currency. In those claims, they claimed joint ownership to the currency and indicated that the funds represented funds received from the monthly payments of a loan from part of a business they sold in Missouri in June 2015.

32. Vang and Xiong provided a copy of a check for one on the loan payments that was dated January 26, 2016, in the amount of $3,019.40; an uncertified/notarized copy of an automatic payment agreement dated July 20, 2015, with handwritten notes indicating payments made previously; a copy of a amortization table for the loan; and a letter written by Vang to

Arvest Bank about a loan. This reoccurring payment is not consistent with the deposits into the bank account.

**Bank Account Seizure**

33. On September 20, 2018, a state seizure warrant for the bank accounts at Wells Fargo and U.S. Bank in the names of Cheng Vang, Tong Xiong, and Chuej Vang was signed by a Josephine County Circuit Court Judge and served on the respective banks.

34. On September 27, 2018, investigators received a cashier's check from Wells Fargo Bank in the amount of $17,300.52, including $16,531.71 from account number xxxxxx7998 in the name of Value Trading LLC, and $768.81 from account xxxxxx3380 in the name of Cheng L. Vang and Tong Xiong (Subject Property #2).

**Follow-up Interview with Devine**

35. On January 9, 2019, Detective Lee contacted James Devine via telephone to clarify his marijuana dealings with Vang. Detective Lee advised Devine that Vang admitted he provided him with marijuana to be transported out of the state of Oregon. Devine stated this was the first and only time he transported marijuana out of the state of Oregon for Vang. Devine stated he flew into Oregon because he was supposed to be working for Vang and the marijuana export plan came up in conversation while Devine was visiting. Devine further stated Vang told him he would pay him a couple of thousand dollars for driving the marijuana to Missouri. Devine further stated he was not sure who he was supposed to meet once he arrived at his destination. Devine was not sure how Vang would be paid for the marijuana he was delivering. Devine did not know if Vang had any other type of employment besides growing marijuana for sale.

**Summary**

36. Based on the above, and my training and investigative experience, I have probable cause to believe that Subject Property #1 and Subject Property #2 are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as they constitute or was derived from proceeds traceable to a specified unlawful activity, possession and distribution of controlled substances, a violation of 21 U.S.C. § 841(a)(1).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 9th day of October 2019.

*s/Christopher Karabinas*

______________________________
Christopher Karabinas
Special Agent
Homeland Security Investigations

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
United States of America

**(b)** County of Residence of First Listed Plaintiff ______
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Amy E. Potter - United States Attorney's Office
405 E. 8th Street, Suite 2400, Eugene OR 97401-2708

**DEFENDANTS**
$17.857.00 US Currency and $17,300.52 US Currency, in rem

County of Residence of First Listed Defendant Josephine
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☒ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

**Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☒ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
21 U.S.C. § 841(a)(1) and 21 U.S.C. § 881(a)(6)
Brief description of cause:
forfeiture of property as proceeds and/or facilitation of drug trafficking

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☑ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE
10/9/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ Amy E. Potter

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______